**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Nayeli Alejandra GONZALEZ REYES | |
| Plaintiff, | Civil Action No: _____ |
| vs. | |
| Carrie M. SELBY, Acting Associate Director, Service Center Operations Directorate of U.S. Citizenship and Immigration Services; | |
| Susan DIBBINS, Chief, Administrative Appeals Office of U.S. Citizenship and Immigration Services; | |
| Sarah KENDALL, Acting Associate Director, Field Operations Directorate of U.S. Citizenship And Immigration Services; | |
| Angelica ALFONSO-ROYALS, Deputy Director, U.S. Citizenship and Immigration Services; | |
| Joseph B. EDLOW, Director, U.S. Citizenship and Immigration Services; | |
| Troy EDGAR, Deputy Secretary, U.S. Department of Homeland Security; | |
| Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; | |
| Defendants. | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND REVIEW OF AGENCY DECISION UNDER THE ADMINISTRATIVE PROCEDURES ACT**

NOW COMES the Plaintiff Nayeli Alejandra Gonzalez Reyes ("Plaintiff" or "Ms. Gonzalez Reyes"), who complains of the defendants as follows:

**INTRODUCTION**

1. Ms. Gonzalez Reyes brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 to remedy the United States Citizenship and Immigration Services' ("USCIS") arbitrary and capricious denial of her I-914 Application for T Nonimmigrant Status ("T-Visa") and subsequent dismissal of her I-290B Appeal ("Appeal").

2. USCIS's denial of her T-Visa and dismissal of her Appeal were unwarranted by the facts, contrary to law, and inconsistent with the humanitarian purpose of the Trafficking Victims Protection Act ("TVPA").

3. Both USCIS's denial of Plaintiff's T-Visa Application and the AAO's subsequent dismissal of her Appeal rest on the same erroneous conclusion: that Ms. Gonzalez Reyes failed to establish she is a victim of a severe form of trafficking in persons. In its initial denial, USCIS relied on this conclusion to find that Plaintiff had also failed to establish the remaining three statutory requirements: (1) that she is physically present in the United States on account of a severe form of trafficking in persons; (2) that she complied with reasonable requests for assistance in the investigation or prosecution of acts of severe forms of trafficking in persons; and (3) that she would suffer extreme hardship involving unusual and severe harm if removed from the United States. *See* Exhibit F. On appeal, the AAO dismissed on the trafficking determination alone and expressly reserved the remaining three elements as unnecessary to its decision. *See* Exhibit S.

4. Plaintiff seeks declaratory and injunctive relief compelling Defendants to lawfully and promptly adjudicate her T-Visa appeal.

## JURISDICTION

5. This Court has jurisdiction under 28 U.S.C. §§ 1331 (federal jurisdiction question) and 2201 (action seeking a declaratory judgment).

6. The Administrative Procedures Act (APA) provides a cause of action and allows for a waiver of sovereign immunity. 5 U.S.C. § 701, *et seq*.

## STANDING

7. The APA provides the right of review for any individual "adversely affected or aggrieved by agency action." 5 U.S.C. § 702. Defendants' improper denial of Plaintiff's I-914 Application has adversely affected her ability to obtain status in the United States and access resources only available to victims of human trafficking. Ms. Gonzalez Reyes thus falls within APA's standing provisions.

## VENUE

8. Venue lies in the District of Massachusetts because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in Massachusetts. 28 U.S.C. §§ 1391(b), (e).

## PARTIES

9. Plaintiff Ms. Gonzalez Reyes is a native and citizen of El Salvador, who resides in Boston, Massachusetts. She was born on December 4, 2000, in Zacatecoluca, La Paz, El Salvador. She last entered the United States on or about October 5, 2008, when she was seven years old, and has remained in the United States continuously since then.

10. Defendant Markwayne Mullin is the Secretary of the Department of Homeland Security ("DHS"), which is the cabinet department responsible for, among other things, administering and enforcing the nation's immigration laws. 6 U.S.C. § 251. He is also

authorized to delegate such powers and authorities to subordinate employees of DHS, including, but not limited to, USCIS. He is sued in his official capacity.

11. Defendant Troy Edgar is the Deputy Secretary for the DHS. He is charged with supporting the Secretary of the DHS, acting as the chief operating officer, managing the day-to-day operations and annual budget, and supporting the DHS's employees. He is sued in his official capacity.

12. Defendant Joseph B. Edlow is the Director of USCIS. He is charged with supervisory authority over all operations of USCIS. He is sued in his official capacity.

13. Defendant Angelica Alfonso-Royals is the Deputy Director of USCIS. She is charged with supporting the Director of USCIS, overseeing major directorates and programs, and managing cross-programmatic projects and operational issues. She is sued in her official capacity.

14. Defendant Sarah Kendall is the Acting Associate Director for the Field Operations Directorate of USCIS, which is the directorate responsible for maintaining the integrity of the immigration system by overseeing a network of domestic and international field offices and the National Benefits Center. She is sued in her official capacity.

15. Defendant Susan Dibbins is the Chief of the Administrative Appeals Office ("AAO") of USCIS, the office responsible for conducting administrative review of USCIS officers' decisions regarding immigration benefit requests to promote consistency and accuracy in the interpretation of immigration law and policy. She is sued in her official capacity.

16. Defendant Carrie M. Selby is the Acting Associate Director of the Service Center Operations Directorate of USCIS, which provides services for people seeking immigration benefits while ensuring the integrity and security of our immigration center. She is tasked

with overseeing six service centers, including the Nebraska Service Center ("NSC") and Vermont Service Center ("VSC"). She is sued in her official capacity.

## STATUTORY AND REGULATORY BACKGROUND

17. In 2000, Congress enacted the Trafficking Victims Protection Act ("TVPA"), Pub. L. No. 106-386, 114 Stat. 1464 (2000), to combat human trafficking, protect victims, and strengthen enforcement mechanisms. The TVPA created the T-Visa to enable victims of severe trafficking to remain in the United States while assisting law enforcement and rebuilding their lives.

18. To be eligible for T nonimmigrant status, an applicant must demonstrate that: (1) they are or have been a victim of a severe form of trafficking in persons; (2) they are physically present in the United States or at a port-of-entry thereto; (3) they have complied with reasonable requests for assistance from law enforcement, unless they warrant an exemption due to age or trauma; and (4) they would suffer extreme hardship involving unusual and severe harm upon removal. *See* 8 C.F.R. § 214.202.

19. The application must include a detailed, signed personal statement and any credible supporting evidence. *See* 8 C.F.R. § 214.204(c). Credible evidence is defined as that which is "plausible, sufficiently detailed, and internally and externally consistent." *See* USCIS Policy Manual, Vol. 3, Pt. B, Ch. 3, § C.2 (2025).

20. Inadmissible applicants must also file an I-192 Application for Advance Permission to Enter as Nonimmigrant ("Waiver Application"). *See* 8 C.F.R. § 214.204(d).

21. Under the TVPA, a severe form of trafficking in persons must involve both a particular means (force, fraud, or coercion) and a particular end or a particular intended end (sex trafficking, involuntary servitude, peonage, debt bondage, or slavery); or, if labor or

services have not been performed, the applicant must establish that they were recruited, transported, harbored, provided, or obtained for the purposes of subjection to sex trafficking, involuntary servitude, peonage, debt bondage, or slavery. *See* 8 C.F.R. 214.206(a)(1)-(2).

22. An applicant for T Nonimmigrant Status must also demonstrate that, at the time of application, they are physically present in the United States on account of at least one of the following: (1) are currently being subjected to a severe form of trafficking in persons; (2) were liberated from a severe form of trafficking by a law enforcement agency (LEA) at any time prior to filing the application; (3) escaped a severe form of trafficking before an LEA was involved, at any time prior to filing the application; (4) were subjected to a severe form of trafficking at some point in the past, and their current presence is directly related to the original trafficking, regardless of the length of time that has passed; or (5) have been allowed entry for participation in the detection, investigation, prosecution, or judicial processes associated with an act or perpetrator of trafficking. *See* 8 C.F.R. § 214.207(a).

23. To establish that an applicant has complied with reasonable requests for assistance from LEAs, "an applicant must, at a minimum, contact an LEA with proper jurisdiction to report the acts of a severe form of trafficking in persons. Credible evidence documenting a single contact with an LEA may suffice." *See* 8 C.F.R. § 214.208.

24. Under the TVPA, an applicant must also establish that removal from the United States would result in extreme hardship involving unusual and severe harm. *See* 8 C.F.R. § 214.209. Factors to consider in determining extreme hardship include, but are not limited to, the following: the age of the applicant, both at the time of entry and at the time of the

application; family ties in the United States; length of residence in the United States; health of the applicant and the availability and quality of any required medical treatment in the applicant's country of nationality, including length and cost of treatment; political and economic conditions in the country in which the applicant would be returned; possibility of other means of adjusting status in the United States; applicant's immigration history; age, maturity, and personal circumstances of the applicant; nature and extent of the physical and psychological consequences of having been a victim of a severe form of trafficking; impact of the loss of access to the U.S. courts and criminal justice system for purposes related to the incident of trafficking; reasonable expectation that the existence of laws, social practices, or customs in the country applicant would be returned would penalize the applicant severely for having been the victim of a severe form of trafficking; likelihood of the occurrence of revictimization upon repatriation and the need, ability, and willingness of foreign authorities to protect the applicant; likelihood that the existence of civil unrest or armed conflict would threaten the applicant's individual safety; and the current or likelihood of future economic harm. *See* 8 C.F.R. § 214.209(b)(1)-(9); *see also* USCIS Policy Manual, Vol. 3, Pt. B, Ch. 2 § E.2 (2025).

25. The applicant has the burden to demonstrate eligibility for T Nonimmigrant Status by a preponderance of the evidence through the submission of any credible evidence. *See* 8 C.F.R. § 214.204(l). USCIS will review all evidence submitted and consider the totality of the evidence in evaluating a T-Visa Application. *Id*.

**STATEMENT OF FACTS**

26. Ms. Gonzalez Reyes was born on December 4, 2000, in Zacatecoluca, La Paz, El Salvador. She last entered the United States on or about October 5, 2008, when she was seven years old. *See* Exhibit A.

27. She married her United States citizen husband, Kevin Gonzalez Vasquez ("Mr. Gonzalez Vasquez" or "Trafficker") in Massachusetts on June 13, 2021. Shortly after they got married, Mr. Gonzalez Vasquez's behavior changed drastically from that of a loving, doting partner to subjecting Ms. Gonzalez Reyes to involuntary servitude and sexual servitude. *Id*.

28. As a result, Plaintiff filed her T-Visa and Waiver Applications with USCIS on January 20, 2023. *See* Exhibits A & B. As required by 8 C.F.R. § 214.204(c), in her T-Visa and Waiver Applications, she included, among other supporting documents that are used to highlight and better articulate her claim, her original signed thirteen-page affidavit describing the circumstances of her trafficking victimization, the trauma she has endured and continues to endure, and the extreme hardship she would suffer if removed from the safety and security of the United States, and a copy of the report submitted to the Federal Bureau of Investigation ("FBI"). *See* Exhibit A.

29. On February 27, 2024, Ms. Gonzalez Reyes received a Request for Evidence ("RFE") on her T-Visa Application from USCIS. In the RFE, USCIS acknowledged that domestic violence and human trafficking are not mutually exclusive, but that there was not enough evidence to show that Plaintiff was "recruited, harbored, transported, or obtained through the use of force, fraud, or coercion, for the purpose of involuntary servitude or commercial sex trafficking." *See* Exhibit C. USCIS concluded that because Plaintiff had not submitted

sufficient evidence to prove she is a victim of a severe form of trafficking in persons, she had also failed to provide adequate evidence to establish physical presence and law enforcement cooperation. *Id*. USCIS requested additional evidence for each of those, as well as to address inadmissibility, despite such evidence already being included in the initial application. *Id*.

30. Plaintiff timely responded to the RFE on May 23, 2024, submitting additional evidence addressing the concerns identified in the RFE. *See* Exhibits D & E. In her response, she included a supplemental declaration in support of her application for T Nonimmigrant Status, evidence of two reports submitted to the FBI regarding her trafficking victimization, a supplemental declaration in support of her application for a waiver, and additional supporting documents to highlight and better articulate her claim. *Id*.

31. On September 19, 2024, Defendants denied Ms. Gonzalez Reyes' T-Visa and Waiver Application. *See* Exhibits F & G. In the denial of the T-Visa Application, USCIS alleges once more that Ms. Gonzalez Reyes failed to establish by a preponderance of evidence that she has been a victim of a severe form of trafficking in persons, that she is physically present, that she has complied with reasonable requests from LEAs, and that she would suffer extreme hardship if removed from the United States. *Id*.

32. Ms. Gonzalez Reyes filed her I-290B Notice of Appeal ("Notice of Appeal") on October 11, 2024, as directed by USCIS. *See* Exhibit H.

33. The VSC received her Notice of Appeal on October 15, 2024, then rejected it on October 22, 2024, claiming it lacked jurisdiction. *See* Exhibits I & J.

34. Plaintiff resubmitted her appeal to the NSC on October 29, 2024 (Receipt Number LIN2502750736). *See* Exhibits K & L.

35. On November 16, 2024, the NSC transferred her Notice of Appeal (Receipt Number LIN2502750736) back to the VSC, which had previously rejected the filing for lack of jurisdiction. *See* Exhibit M.

36. Ms. Gonzalez Reyes filed her I-290B Brief and Supporting Documents ("Appeal Brief Package") with the NSC on November 25, 2024, which the NSC received on November 26, 2024 (Receipt Number LIN2505351491). *See* Exhibits N & O.

37. On December 18, 2024, NSC transferred Ms. Gonzalez Reyes' Appeal Brief Package (Receipt Number LIN2505351491) to the VSC. *See* Exhibit P.

38. On July 8, 2025, the VSC notified Ms. Gonzalez Reyes that both filings were being transferred to the National Benefits Center. *See* Exhibit Q.

39. On September 9, 2025, the National Benefits Center transferred both filings to the AAO. *See* Exhibit R.

40. After repeated transfers and extensive delay, the AAO dismissed Plaintiff's Appeal on January 28, 2026, adopting the same erroneous trafficking determination underlying USCIS's denial. *See* Exhibit S.

### COUNT ONE
**(Violation of The Administrative Procedure Act – Arbitrary and Capricious)**

41. Plaintiff repeats, alleges, and incorporates the foregoing paragraphs as if fully set forth herein.

42. The APA entitles "a person suffering legal wrong because of agency action or adversely affected or aggrieved by agency action … to judicial review." *See* 5 U.S.C. § 702.

43. "Agency action," for purposes of the APA, includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *See* 5 U.S.C. § 551(13).

44. The APA provides that courts "shall…hold unlawful and set aside a final agency action," that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

45. The documents that Plaintiff submitted to USCIS established that Ms. Gonzalez Reyes is a victim of a severe form of trafficking in persons, as she was: (1) recruited by Trafficker who proactively targeted her due to her vulnerabilities; (2) obtained by Trafficker who coerced and defrauded Ms. Gonzalez Reyes into a marriage to control her; and (3) harbored by Trafficker who substantially limited and restricted her movement and agency by keeping her isolated, confined, and monitored. Trafficker accomplished this by means of: (1) fraud, when Trafficker made false promises of love, marriage, a better life, and to assist her in obtaining legal immigration status, but overtime unexpected changes in the nature of their relationship occurred whereby Trafficker showed his true intentions, becoming abusive and controlling; (2) force, when Trafficker physically and sexually abused Ms. Gonzalez Reyes on numerous occasions; and (3) coercion, when Trafficker routinely made threats of serious harm and other coercive tactics, such as verbal abuse, isolation, monitoring, confinement, and assault, as part of a scheme intended to create fear in Plaintiff that if she did not comply with his demands and expectations she would be subjected to grave harm. Trafficker did this for the purposes of subjecting her to (1) involuntary servitude, when Trafficker compelled Plaintiff into domestic servitude and sexually exploited her; and (2) sexual servitude and commercial sex trafficking, when Trafficker physically and emotionally forced and coerced Plaintiff into sexual relations in exchange for things of value to her, his attention, and her safety, tranquility, and future in the United States. *See* Exhibits A, D, and N.

46. The denial of Plaintiff's T-Visa Application, and subsequent dismissal of her Appeal, was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. USCIS's denial offers explanations that run contrary to the evidence before the agency, entirely fails to consider important aspects of the problem, and includes reasoning that is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *See Motor Vehicle Manufacturers Association v. State Farm Auto Mutual Insurance Co.*, 463 U.S. 29, 43 (1983); *see also* Exhibits F and S.

47. Plaintiff has exhausted all administrative remedies available to them as of right.

48. Plaintiff has no other recourse to judicial review other than by this action.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays that this Court grant the following relief:

1.  Vacate and set aside AAO's January 28, 2026 dismissal under 5 U.S.C. § 706(2)(A);

2.  Vacate and set aside USCIS's September 19, 2024 denial;

3.  Remand to USCIS for adjudication consistent with the Court's order;

4.  Award attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) and 5 U.S.C. § 504 if applicable; and,

5.  Order any further relief this Court deems just and proper.

Dated: April 30, 2026                                          Respectfully Submitted,

_____
Rachel L. Rado, Esq. | BBO #: 682095
Attorney for the Plaintiff
Law Offices of Rachel L. Rado
175 Portland Street, 2nd Floor
Boston, MA 02114
Tel: 617-871-6030
Email: rachel@rachelradolaw.com